UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Wei Zhang,<br><br>                            Plaintiff,<br><br>        -against-<br><br>Capital One Financial Corporation; Truist Bank d/b/a LightStream; Trans Union LLC a/k/a TransUnion; Experian Information Solutions, Inc.; Equifax Information Services LLC,<br><br>                         Defendants. | Civil Action<br>Case No.: 1:26-cv-02496<br><br><br>**COMPLAINT** |

Plaintiff Wei Zhang ("Plaintiff"), by and through her attorneys, Petroff Amshen LLP, as and for her complaint against the defendants named herein, hereby alleges the following upon personal knowledge, review of public record, and/or otherwise upon information and belief:

1. Plaintiff brings this action against Trans Union LLC a/k/a TransUnion ("TransUnion"), Experian Information Solutions, Inc. ("Experian"), Equifax Information Services LLC ("Equifax") (collectively, the "CRAs"), Capital One Financial Corporation ("Capital One"), and Truist Bank d/b/a LightStream ("Truist"), arising from their willful and negligent violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq.

## **PARTIES**

2. Plaintiff is an individual resident of the State of New York, residing in Queens County, and is a "consumer" as defined by 15 U.S.C. § 1681a(c).

3. Capital One is a corporation organized under the laws of the State of Delaware, and is a "person" and a "furnisher" of information to consumer reporting agencies as defined by and subject to the FCRA, including the duties enumerated under 15 U.S.C. § 1681s-2.

2

4. Truist is a state-chartered bank, organized under the laws of the State of North Carolina, and is a "person" and a "furnisher" of information to consumer reporting agencies as defined by and subject to the FCRA, including the duties enumerated under 15 U.S.C. § 1681s-2.

5. TransUnion is a Delaware limited liability company, and is a "consumer reporting agency," as defined by and subject to 15 U.S.C. §§ 1681a(f) and 1681a(p).

6. Experian is an Ohio corporation and is a "consumer reporting agency" as defined by and subject to 15 U.S.C. §§ 1681a(f) and 1681a(p).

7. Equifax is a Georgia limited liability company, and is a "consumer reporting agency," as defined by and subject to 15 U.S.C. §§ 1681a(f) and 1681a(p).

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Plaintiff's claims arise under federal law.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district, including the harm suffered by Plaintiff.

## STATEMENT OF FACTS

10. Plaintiff's credit report, as reported by the CRAs, includes two accounts at issue: a Capital One account (Account No. 51567693XXXX) ("Capital One Account"), and a Truist account (Account No. LS4862XXXX) ("Truist Account") (collectively, the "Accounts").

11. Plaintiff began a months-long trip to China on May 5, 2025, and did not arrive back to New York until November 7, 2025.

12. After concluding the trip, Plaintiff went to Chase Bank to inquire about a potential mortgage as Plaintiff wanted to purchase a home.

3

13.     During Plaintiff's discussion with employees of Chase Bank, Plaintiff was notified of the existence of the Capital One Account.

14.     Plaintiff contacted Capital One and was informed that the Capital One Account was opened on June 10, 2025, while she was out of the county, using email address weiz198520@gmail.com and phone number (347) 817-9053.

15.     Plaintiff did not recognize or consent to the creation of the Capital One Account, nor did she authorize someone to create it on her behalf.

16.     Plaintiff did not recognize the email address used, and it never belonged to her, nor was it ever used by her.

17.     Plaintiff recognized the phone number as the number associated with her old phone that she discarded and stopped using in May 2025 before she temporarily moved to China.

18.     As a direct result of the fraudulent Capital One Account, Plaintiff could only be approved for the mortgage if the outstanding debt was resolved.

19.     Plaintiff, in a desperate effort to bring her credit into current standing, made a "payment under protest" of $343 on November 26, 2025, fully cognizant that she was not responsible for or remotely connected to the debt.

20.     The Truist Account belonged to Plaintiff, but it was settled on January 7, 2026.

21.     The balance of the Truist Account, as reported by the CRAs, was $28,632.00. Yet, per Plaintiff's settlement agreement, the balance should have dropped to $0.00.

22.     The CRAs continued to publish incorrect information regarding the Truist Account.

23.     On January 21, 2026, Plaintiff disputed the Capital One Account with the CRAs.

24.     On March 9, 2026, Plaintiff disputed the Truist Account with the CRAs.

25. The first dispute contained letters addressed to the CRAs, clearly stating that Plaintiff was in no way connected to or responsible for the Capital One Account and Plaintiff was a victim of identity theft.

26. A second dispute outlined the wrongful reporting of the Truist Account.

27. The letters also included a request to investigate and promptly remove the Accounts from Plaintiff's credit report.

28. Moreover, Plaintiff included copies of her personal identification within both disputes, in the form of three documents: (1) New York State Driver's License; (2) proof of residence; and (3) social security card.

29. Finally, the first dispute also included a complete copy of Plaintiff's FTC Identity Theft Report (Report No. 196227673).

30. Following Plaintiff's first dispute, the CRAs did not delete or correct the fraudulent Capital One Account.

31. On the contrary, the CRAs and Capital One responded to Plaintiff's first dispute by continuing to report the Capital One Account, and by reporting it in a manner materially worse than before the dispute.

32. The reported negative changes on the Capital One Account include: (1) a reported balance increase from $3,247.00 to $3,611.00; (2) a reported "Past Due" increase from $0.00 to $267.00; and (3) a reported "Payment Status" change from "Current" to "Late 60 Days" with TransUnion and Equifax, and "Late 30 Days" with Experian.

33. Plaintiff has received a partial change to the balance of the Truist Account; however, its mere presence, irrespective of the incorrectly reduced balance, continues to constitute wrongful reporting.

5

34. Additionally, the CRAs continue to report the Truist Account with contradictory or inconsistent information.

35. The reported inaccurate balance changes on the Truist Account include a decrease from $28,632.00 to $9,632.00 at Experian and Equifax, and $0.00 at TransUnion.

36. TransUnion updated its comment from "Charged Off as bad debt Profit and loss write-off" to "Payment after charge off Settled – less than full balance."

37. Equifax updated its comment from "Charged off account Amount in high credit original charge-off amount" to "Consumer disputes this account information Charged off account."

38. Experian did not update its comment field, which continues to state, "Unpaid balance reported as a loss by the credit grantor."

39. The CRAs did not report a change to the "Account Status," leaving a "Derogatory" status on the settled Truist Account.

40. Upon receiving both disputes from the Plaintiff, the CRAs were obligated to investigate the improper nature of the disputed Accounts.

41. Upon receiving the Plaintiff's disputes from the CRAs, Capital One and Truist, as furnishers of information, were obligated under 15 U.S.C. § 1681s-2(b) to conduct a reasonable and timely investigation of the affected Accounts.

42. The CRAs failed in their obligation to conduct a reasonable investigation.

43. Capital One and Truist violated their duties by furnishing inadequate or inaccurate information about Plaintiff to the CRAs.

44. Accordingly, the defendants' failures to comply with their statutory duties are directly responsible for the ongoing inaccuracies in Plaintiff's credit reports.

6

45. The continued inaccurate reporting of the Accounts has caused Plaintiff significant financial, material, and emotional hardship.

46. At the time of Plaintiff's mortgage application, the defendants' continued reporting of the Truist Account as "Collection/Chargeoff and "Derogatory," together with a non-zero balance and past due amount reported by Experian and Equifax, was visible to Plaintiff's mortgage lender on Plaintiff's credit report pulled in connection with underwriting.

47. The negative and wrongful reporting of the Truist Account directly impacted Plaintiff's ability to obtain a residential mortgage on the timeline and terms then available to her.

48. The inaccurate reporting of a $9,632.00 balance and a past due amount on the settled Truist Account inflated Plaintiff's liabilities for purposes of the mortgage underwriter's debt-to-income calculation, reducing the loan amount for which Plaintiff would qualify.

49. Plaintiff was compelled to make a payment under protest of $343.00 to Capital One on November 26, 2025, toward a debt she did not incur, to mitigate the damage to her credit file as to appear financially secure to Plaintiff's mortgage lender.

50. As the defendants continued to wrongfully report on the Accounts, Plaintiff could not move forward with her mortgage application and the acquisition of a home.

51. But for the defendants' continued violations of their obligations and Plaintiff's rights, Plaintiff would have been approved for the mortgage and would be living in a new home, without delay, on the terms then available to her.

52. Plaintiff's living conditions were such that Plaintiff could not afford to wait any longer for the defendants to act within their FCRA obligations.

7

53.     As such, Plaintiff was forced to make, yet again, a payment under protest, on April 1, 2026, to Capital One for $580.00, once more restoring the fraudulent Capital One Account to current standing.

54.     Plaintiff is now enrolled in automatic monthly minimum payments to Capital One on the fraudulent Capital One Account in the amount of $163.00 and continues to incur monetary loss each month to service a debt not belonging to her.

55.     As a direct and proximate result of the defendants' conduct, Plaintiff has paid no less than $923.00 toward the fraudulent Capital One Account to prevent further degradation of her credit.

56.     Plaintiff has expended significant time and out of pocket expenses communicating with the defendants in an effort to remove the inaccurate information.

57.     Plaintiff has suffered anxiety, stress, humiliation, and emotional distress as a result of defendants' conduct, including the stress of being held financially responsible for a debt she did not create, the urgency imposed on her housing plans, and the repeated discovery that despite her disputes her credit reports have demonstrably worsened.

58.     Plaintiff has suffered concrete injury as a direct and proximate result of the defendants' violations of the FCRA, including: (1) monetary losses in the form of payments made on a fraudulent debt; (2) obstruction of Plaintiff's ability to obtain mortgage financing then available to Plaintiff; (3) damage to Plaintiff's credit score; (4) emotional distress, anxiety, humiliation, and loss of sleep.

59.     Plaintiff's injuries are directly traceable to the defendants' conduct.

## CAUSES OF ACTION

### COUNT I: Willful Noncompliance With The FCRA *Against Capital One*
### (Violations of 15 U.S.C. § 1681s-2(b))

8

60.     Plaintiff incorporates by reference each of the preceding paragraphs.

61.     Capital One received notice of Plaintiff's dispute from the CRAs.

62.     Capital One provided information relating to Plaintiff to the CRAs, that it knew or had reasonable cause to believe was inaccurate.

63.     Capital One reported the Capital One Account as Plaintiff's obligation despite Plaintiff never having applied for, authorized, or benefited from it.

64.     Capital One had reasonable cause to believe the information was inaccurate based on its own lack of documentation for the opening of the Capital One Account, and subsequently upon notification from the CRAs regarding Plaintiff's formal dispute.

65.     Capital One continued to provide information to the CRAs after being notified by Plaintiff, at an address specified for such notices (or through their regular channels for customer disputes), that specific information was inaccurate.

66.     Capital One had specific knowledge that would cause a reasonable person to have substantial doubts about the accuracy of the information regarding the Capital One Account.

67.     Capital One provided information about Plaintiff's disputed Capital One Account to the CRAs without a notice that such information was disputed by the consumer.

68.     After receiving notice of Plaintiff's dispute from the CRAs, Capital One continued to furnish information concerning the Capital One Account to the CRAs, including continuing to report the Capital One Account as Plaintiff's obligation, despite knowing or having reasonable cause to believe that such information resulted from identity theft and was therefore inaccurate.

69.     Capital One's conduct was willful.

70.     Capital One acted with knowledge of its obligations under the FCRA and in reckless disregard of Plaintiff's rights and the accuracy of the information reported.

9

71.     This willfulness is evidenced by repeated failure to respond meaningfully to Plaintiff's inquiries, its failure to produce any documentation for the Accounts, and its continued reporting of the inaccurate information despite clear and repeated notice of the fraud and dispute.

### COUNT II: Negligent Noncompliance With The FCRA *Against Capital One* (Violations of 15 U.S.C. § 1681s-2(b))

72.     Plaintiff incorporates by reference each of the preceding paragraphs.

73.     Capital One's conduct constituted negligent noncompliance as a furnisher of information, thereby violating its duties under 15 U.S.C. § 1681s-2(b).

74.     Capital One failed to exercise reasonable care in its information furnishing practices and in its investigation processes upon receiving notice of Plaintiff's dispute, thereby breaching its duties owed to Plaintiff under the FCRA.

### COUNT III: Willful Noncompliance With The FCRA *Against Truist* (Violations of 15 U.S.C. § 1681s-2(b))

75.     Plaintiff incorporates by reference each of the preceding paragraphs.

76.     Truist received notice of Plaintiff's dispute from the CRAs.

77.     Truist provided information relating to Plaintiff to the CRAs, that it knew or had reasonable cause to believe was inaccurate.

78.     Truist reported an incorrect balance after the Truist Account was settled.

79.     Truist had reasonable cause to believe the information was inaccurate after receiving notice of Plaintiff's dispute from the CRAs.

80.     Truist continued to provide information to the CRAs after being notified by Plaintiff, at an address specified by Truist for such notices (or through their regular channels for customer disputes), that specific information was inaccurate.

81.     Truist had specific knowledge that would cause a reasonable person to have substantial doubts about the accuracy of the information regarding the Truist Account.

10

82.    Truist provided information it knew Plaintiff disputed to the CRAs without properly marking the information as disputed.

83.    Truist violated its duties under 15 U.S.C. § 1681s-2(b) by failing to: (1) conduct a reasonable and proper investigation with respect to the disputed information; (2) review all relevant information provided by the CRAs concerning the dispute; (3) report the results of its investigation to the CRAs; and (4) if the investigation found the information to be inaccurate or incomplete or if it could not be verified, Truist failed to instruct the CRAs to modify, delete, or permanently block the reporting of that item of information.

84.    Truist's conduct was willful, as it acted with knowledge of its obligations under the FCRA and in reckless disregard of the accuracy of the information.

85.    This willfulness is evidenced by its repeated failures to respond meaningfully to Plaintiff's direct inquiries and its continued reporting of inaccurate information despite clear notice that Plaintiff settled the Truist Account and was no longer responsible for it.

### COUNT IV: Negligent Noncompliance With The FCRA *Against Truist*
### (Violations of 15 U.S.C. § 1681s-2(b))

86.    Plaintiff incorporates by reference each of the preceding paragraphs.

87.    Truist's conduct constituted negligent noncompliance with its duties as a furnisher of information, thereby violating its duties under 15 U.S.C. § 1681s-2(b).

88.    Truist failed to exercise reasonable care in its information furnishing practices and in its investigation processes upon receiving notice of Plaintiff's dispute, thereby breaching its duties owed to Plaintiff under the FCRA.

**COUNT V: Willful Noncompliance With The FCRA *Against The CRAs***
**(Failure to Conduct Reasonable Reinvestigation - Violation of 15 U.S.C. § 1681i)**

89.    Plaintiff incorporates by reference each of the preceding paragraphs.

90.    The CRAs received two disputes from the Plaintiff concerning the inaccurate information related to the Accounts appearing in her consumer report.

91.    Pursuant to 15 U.S.C. § 1681i(a), upon receipt of Plaintiff's dispute, the CRAs were required to conduct a reasonable reinvestigation to determine the accuracy of the disputed information and record the current status of the disputed information, or delete the item from the file, within thirty (30) days of receiving the dispute.

92.    The CRAs failed to conduct a reasonable reinvestigation of Plaintiff's disputes.

93.    The CRAs failed to review all relevant information submitted by Plaintiff.

94.    The CRAs failed to delete or correct the inaccurate information, or to accurately record the status of the disputed information concerning the account.

95.    The CRAs' reporting of the Truist Account and the Capital One Account is materially inconsistent across the three bureaus. These inconsistencies between the CRAs demonstrate the CRAs' failure to conduct a reasonable reinvestigation of Plaintiff's disputes.

96.    The CRAs' failure to perform a reasonable reinvestigation after receiving Plaintiff's comprehensive dispute and compelling evidence of identity theft, was willful.

97.    The CRAs acted with knowledge of their statutory duties or in reckless disregard of those duties and Plaintiff's rights.

**COUNT VI: Negligent Noncompliance With The FCRA *Against The CRAs***
**(Failure to Conduct Reasonable Reinvestigation - Violation of 15 U.S.C. § 1681i)**

98.    Plaintiff incorporates by reference each of the preceding paragraphs.

99.    The CRAs' conduct constituted negligent noncompliance with their duty to conduct a reasonable reinvestigation of disputed information under 15 U.S.C. § 1681i(a).

100. The CRAs failed to exercise reasonable care in their reinvestigation process concerning Plaintiff's dispute of the Accounts.

**COUNT VII: Willful Noncompliance With The FCRA *Against The CRAs***
**(Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy -**
**Violation of 15 U.S.C. § 1681e(b))**

101. Plaintiff incorporates by reference each of the preceding paragraphs.

102. Pursuant to 15 U.S.C. § 1681e(b), CRAs must follow reasonable procedures to assure maximum possible accuracy of the information in their reports.

103. The CRAs failed to follow reasonable procedures to ensure maximum possible accuracy of the information concerning Plaintiff.

104. The continued reporting of the Accounts and the reporting of inconsistent information demonstrates the CRAs' failure to adhere to this statutory mandate.

105. The CRAs' failure to establish or follow such reasonable procedures was willful, representing a knowing failure to comply with their statutory duties or a reckless disregard for the accuracy of the information they compile and disseminate about Plaintiff.

**COUNT VIII: Negligent Noncompliance With The FCRA *Against The CRAs***
**(Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy -**
**Violation of 15 U.S.C. § 1681e(b))**

106. Plaintiff incorporates by reference each of the preceding paragraphs.

107. The CRAs' conduct constituted negligent noncompliance with their duty to follow reasonable procedures to assure maximum possible accuracy of information in their consumer reports under 15 U.S.C. § 1681e(b).

108. The CRAs failed to exercise reasonable care in their consumer report preparation and accuracy assurance processes.

13

**COUNT IX: Willful Noncompliance With The FCRA *Against The CRAs***
**(Failure to Block Identity Theft Information - Violation of 15 U.S.C. § 1681c-2)**

109.    Plaintiff incorporates by reference each of the preceding paragraphs.

110.    Pursuant to 15 U.S.C. § 1681c-2(a), a consumer reporting agency must block the reporting of any information in the file of a consumer that the consumer identifies as information that resulted from an alleged identity theft, no later than four (4) business days after the date of receipt by such agency of: (1) appropriate proof of the identity of the consumer; (2) the identification of such information by the consumer; and (3) a statement by the consumer that the information does not relate to any transaction by the consumer.

111.    Plaintiff provided the CRAs with all necessary items for an identity theft block under 15 U.S.C. § 1681c-2(a) via her comprehensive submission mailed on January 21st, 2026.

112.    The CRAs willfully failed to timely block the reporting of the Capital One Account within four business days of their receipt of Plaintiff's complete request and documentation.

113.    Alternatively, if the CRAs did implement a block, they impermissibly and willfully rescinded such block without proper notification to Plaintiff or a valid basis, as the Capital One Account continued to appear on Plaintiff's consumer reports.

114.    The CRAs' failure to block, or their improper rescission of a block, was willful, demonstrating a knowing or reckless disregard for their obligations under 15 U.S.C. § 1681c-2.

**COUNT X: Negligent Noncompliance With The FCRA Against The CRAs**
**(Failure to Block Identity Theft Information - Violation of 15 U.S.C. § 1681c-2)**

115.    Plaintiff incorporates by reference each of the preceding paragraphs.

116.    The CRAs' conduct constituted negligent noncompliance with their duties to block the reporting of information resulting from identity theft under 15 U.S.C. § 1681c-2.

117.    The CRAs failed to exercise reasonable care in implementing or maintaining the required block on information related to the Capital One Account.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against the defendants, jointly and severally where appropriate, for the following:

I.     Actual damages in an amount to be fully determined at trial, including but not limited to compensation for credit denials, damage to creditworthiness and reputation, financial burden, and emotional distress, pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

II.    Statutory damages, as permitted under 15 U.S.C. § 1681n(a)(1)(A);

III.   Punitive damages in an amount to be determined at trial as may be allowed under 15 U.S.C. § 1681n(a)(2) for the willful and reckless violations of the FCRA;

IV.    Reasonable attorneys' fees and costs incurred in prosecuting this action, pursuant to 15 U.S.C. §§ 1681n(a)(3), and 1681o(a)(2).

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Plaintiff requests a trial by jury on all issues so triable.

Dated: Brooklyn, New York        **PETROFF AMSHEN LLP**
April 27, 2026                   *Attorneys for Plaintiff,*
                                Wei Zhang

                                */s/ Serge F. Petroff*
                                Serge F. Petroff, Esq.
                                1795 Coney Island Avenue, Third Floor
                                Brooklyn, New York 11230
                                Telephone: (718) 336-4200
                                Email: spetroff@petroffamshen.com

15